IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARY A. JASSO, et al.,

    Plaintiffs,

No. CIV S-07-2769 GEB EFB PS

vs.

UNITED STATES DEPARTMENT OF
AGRICULTURE FOREST SERVICE,
et al.,

FINDINGS AND RECOMMENDATIONS

    Defendants.

_____/

    This action, in which all plaintiffs are proceeding pro se, was referred to the undersigned pursuant to Local Rule 72-302(c)(21).[1] *See* 28 U.S.C. § 636(b)(1). The case was before the court on May 8, 2008, for hearing on the defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1), and in the

////

////

---

[1] This case has been ordered related to *Jasso, et al. v. Citizens Telecommunications, et al.*, 2:05-cv-2649 GEB EFB PS, and *Garcia, et al. v. California Department of Forestry, et al.*, 2:07-cv-2770 GEB EFB PS. Each case involves most of the same plaintiffs and the same or similar allegations of personal injuries caused by radiofrequency emissions from telecommunications facilities on Likely Mountain. *See* E.D. Cal. L.R. 83-123.

alternative, pursuant to Rule 12(b)(6) based on collateral estoppel.[2] Adam Bain, Senior Trial Counsel, and Todd Pickle, Assistant U.S. Attorney, appeared on behalf of the defendants. The plaintiffs appeared in pro se.[3] The motion was taken under submission and, for the reasons set for below, the court recommends that defendants' Rule 12(b)(1) motion be granted and the case be dismissed.

**I. BACKGROUND**

This action is proceeding on the complaint filed December 26, 2007. Plaintiffs are former employees and/or family members of employees who worked seasonally for the California Department of Forestry and Fire Protection ("CDF") at the "Likely Mountain Lookout" site in Lassen County, California. The employees worked as seasonal fire lookouts at the "Likely Mountain Telecommunications and Lookout Tower Worksite ("LMT"), which is located in Modoc National Forest. Modoc is owned by the United States Department of Agriculture, United States Forest Service ("USFS"). Compl., ¶ 4.

Mary Jasso worked for the CDF at the LMT for eleven fire seasons, and Illa Garcia worked there for three seasons. Compl., ¶¶ 12-13, 15. They lived at the site during each season, and their families either lived with them or visited them frequently. Plaintiffs allege that the telecommunications towers, antennae, dishes and other equipment located at the LMT on land leased by the USFS to various telecommunications companies emitted harmful radiation.

////

////

---

[2] Plaintiffs filed a state court action against various state defendants concerning the same injuries. The court granted defendants' summary judgment motion and dismissed the case. Plaintiffs have not successfully appealed that decision. *See* Defendants' Request for Judicial Notice in Support of Motion to Dismiss; Appendix of Exhibits ("Defs.' Exhs."), Exh. I.

[3] The court refers to the following parties – Mary A. Jasso, Gilbert Tiffee, Sr., Dorothy Tiffee, Illa L. Garcia, Teresa Huddleston-Garcia, Gail Griffith, and Kurtis Ainslie – collectively as "plaintiffs." All plaintiffs appeared at the May 8, 2008, hearing except for Illa L. Garcia and Teresa Huddleston-Garcia, whose non-appearance the court excused based on their submission of the matter without oral argument.

Plaintiffs allege that, beginning around May 2000, they were exposed to significant radiofrequency and microwave radiation emissions, and began to suffer debilitating illnesses as a result thereof beginning in July 2002. Compl., at ¶¶ 12-21.

Beginning in the Fall of 2004, Garcia and several other plaintiffs filed federal administrative tort claims with the Bureau of Land Management ("BLM") and the USFS. *See* Defs.' Exhs. C, F. In September 2005, Ms. Jasso filed an administrative claim with the BLM and USFS on behalf of herself and her family members.[4] *See* Defs.' Exhs. B, G. While plaintiffs now concede that the BLM has no connection to the telecommunications facilities plaintiffs believe are responsible for their injuries, plaintiffs have chosen to pursue their claims against the USFS by filing this action. *See* Plaintiffs' Reply and Opposition to Defendants' Motion to Dismiss ("Opp'n"), ¶ 25.

On December 26, 2007, plaintiffs filed this suit, naming as defendants: (1) the United States Department of Agriculture, Forest Service; (2) the Modoc National Forest; (3) Stanley G. Sylva, in his capacity as Forest Supervisor, Modoc National Forest; (4) Rick Anderson, in his capacity as Claims Field Manager, Albuquerque Service Center; (5) Cindi Boukidis, in her capacity as "Legal Admin Specialist," Albuquerque Service Center (6) Doe Agency; and (7) Doe Employee.[5] *See* Compl., pp. 1-2.

Plaintiffs' complaint is hardly a model of clarity. It consists of a confusing amalgam of tort claims predicated on alleged breaches of statutory duties and unfocused civil rights claims.

////

---

[4] The administrative tort claims filed with the BLM were denied. *See* Defs.' Exh. J. The plaintiffs did not file suit within six months of that denial and those claims are barred. It is unclear what became of the administrative claims submitted to the USFS, but it appears that they were not acted upon within six months of filing, and the plaintiffs thus chose to file this action. *See* 28 U.S.C. § 2401(b).

[5] Following the hearing, defendants filed a Certification of Scope of Employment pursuant to 28 U.S.C. § 2679(d) and 28 C.F.R. § 15.4, certifying that defendants Stanley G. Sylva, Rick Anderson, and Cindi Boukidis were acting within the scope of their federal offices or employment at the times of the allegations giving rise to plaintiffs' claims.

However, the crux of plaintiffs' complaint is that these federal defendants failed to protect plaintiffs from, warn them about, and investigate their alleged injuries arising from "hazardous toxic radiation emitting antennae at LMT, which are allegedly non-discretionary duties pursuant to 15 U.S.C. § 1261(2)(g); 29 CFR § 1910.268(a)(3); (c)(1)(p)(2)(3); 47 CFR § 1.1307(b); 47 CFR § 1.1310 and the OSH ACT of 1970." Compl., ¶ 19.

The first "count" of the complaint alleges "negligence under color of law and in violation of civil rights (18 USC § 242; 1842 [*sic*] USC § 1983)." Compl., p. 11. In this count, plaintiffs allege that defendants had a "mandatory duty to prevent EMF radiation exposure and harm to humans" from the telecommunications antennae at LMT. Compl., ¶ 29. They also allege that defendants had a "mandatory duty to warn and protect" them from such radiation exposure. Compl., ¶ 31. They allege that had defendants and their lessees complied with OSHA and NEPA regulations ("29 C.F.R. § 1910.268(a)(3)(c)(1)(p)(2)(3)" and 47 C.F.R. §§ 1.1307(b), 1.1310), plaintiffs would have known about the hazards at LMT and would have taken steps to prevent their injuries. *Id.*

The second "count" alleges "violation[s] of plaintiffs [*sic*] civil rights under color of law (18 U.S.C. § 241 and §242; 42 U.S.C. § 1983; and Fourteenth Amendment U.S. Constitution)." Compl., p. 14. In this count, plaintiffs seem to allege that defendants' failures to investigate and police themselves and their lessees amount to constitutional violations.

The third "count" alleges "further abuse of powers, and obstruction of Justice (18 U.S.C. § 241; 18 U.S.C. § 242; 42 U.S.C. § 1983; and Fourteenth Amendment U.S. Constitution)." Compl., p. 16. Plaintiffs allege that defendants violated their constitutional rights by failing to respond appropriately to their alleged injuries.

**II. DISCUSSION**

Defendants move to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and, alternatively, pursuant to Rule12(b)(6) for failure to state a claim based on collateral estoppel. For the reasons that follow, the court finds that it lacks subject matter

4

jurisdiction over plaintiffs' claims, and that the case should be dismissed.  Accordingly, the court declines to reach the merits of defendants' Rule 12(b)(6) motion.

A.  Rule 12(b)(1) Standard

It is axiomatic that federal district courts are courts of limited jurisdiction.  They are authorized to adjudicate only those cases which the Constitution and the laws of Congress permit.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  A case presumably lies outside the jurisdiction of the federal courts unless proven otherwise.  *Kokkonen*, 511 U.S. at 376-78; *Stock W., Inc. v. Confederated Tribes of Colvill Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citing *Cal. ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979)). On a Rule12(b)(1) motion to dismiss for lack of subject matter jurisdiction, plaintiff bears the burden of proof that jurisdiction exists.  *See, e.g., Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995); *Thornhill Pub. Co. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

In a motion to dismiss for lack of subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).  The court is free to consider evidence such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.  Consideration of material outside the pleadings does not necessarily convert a Rule 12(b)(1) motion into one for summary judgment.  *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983).

////

////

////

////

////

B. Application

As noted, the claims in the complaint suggest both tort claims and purported civil rights claims.[6] Defendants argue that the court lacks subject matter jurisdiction over the tort claims because plaintiffs have failed to meet certain jurisdictional prerequisites to suit under the FTCA; i.e: (1) only the United States can be sued under the FTCA; and, (2) the alleged wrongful conduct falls within the FTCA's discretionary function exception to the waiver of immunity. Defendants move to dismiss the purported civil rights claims because they are barred by sovereign immunity.

1. Proper Party under FTCA

The FTCA "provides a limited waiver of the sovereign immunity of the United States for torts committed by federal employees acting within the scope of their employment." *Nurse v. United States*, 226 F.3d 996, 1000-01 (9th Cir. 2000) (citing *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995)). Federal agencies may not be sued *eo nominee* under the FTCA. *Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1188 (9th Cir. 1998) (federal agency "cannot be sued *eo nomine* unless so authorized by Congress in explicit language."). Rather, the "United States is the only proper party defendant in an FTCA action." *Kennedy v. United States Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998). Accordingly, the named federal agencies must be dismissed.

Neither does the FTCA's limited waiver of sovereign immunity extend to suits brought against federal employees acting within the scope of their employment. *See* 28 U.S.C. § 2679(b)(1) (commonly referred to as the Westfall Act, which confers immunity to federal employees acting within the scope of their office or employment regardless of whether their conduct was discretionary); *see Adams v. United States*, 420 F.3d 1049, 1052 (9th Cir. 2005).

---

[6] Plaintiffs allege jurisdiction pursuant to the Federal Tort Claims Act ("FTCA"), in addition to other federal statutes. *See* Compl., ¶ 5 (alleging jurisdiction pursuant to 28 U.S.C. § 1346(b)(1)).

6

The Act specifically contemplates that the United States be substituted in place of such employees upon the certification that they were acting within the scope of their employment while performing the acts complained of in the complaint. Plaintiffs have sued each individual defendant in their "capacity" as a federal officer or employee. *See* Compl., ¶ 7. At the hearing, plaintiffs confirmed that they were suing defendants in their official capacities for acts they committed as federal employees. Further, the government has since filed a notice certifying that, with respect to the claims set forth in the complaint, the named individual defendants were acting within the scope of their federal offices of employment. *See* doc. no. 19. The FTCA specifically provides that upon the certification that the employees were acting within the scope of their employment the action "shall be deemed an action against the United States. . . , and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). Accordingly, by operation of § 2679(d)(1), the United States is substituted in place of the individually named defendants and they must be dismissed with respect to the FTCA claims.

          2. <u>Discretionary Function Exception</u>

With the United States as the only proper party under the FTCA, the next question is whether plaintiffs have asserted claims falling within that statute's limited waiver of sovereign immunity. As discussed below, they have not.

The FTCA waives sovereign immunity for specified torts of federal employees acting within the scope of their employment "in the same manner and to the same extent as a private individual under like circumstances" would be liable under the law of the state "where the act of omission occurred." 28 U.S.C. §§ 1346(b), 2674. The FTCA applies only if state law would impose liability on a private person. *United States v. Olson*, 546 U.S. 43, 44-46 (2005). Further, "the FTCA's waiver of immunity is limited by a number of statutory exceptions." *Nurse*, 226 F.3d at 1000-01 (citing 28 U.S.C. § 2680). If plaintiffs' causes of action "fall within one or more of these exceptions, then the federal courts lack subject matter jurisdiction to hear their claims." *Id*. (citing *Donahue v. United States Dep't of Justice*, 751 F. Supp. 45, 47 (S.D.N.Y. 1990)).

One such exception to the waiver of immunity is where the claim is based on an act or failure to act that is within a government official's discretion. *See* 28 U.S.C. § 2680(a) (government does not waive immunity where claims are based "upon the exercise or performance or the failure to exercise or perform a discretionary function or duty"). Whether the "discretionary function exception" applies is determined by a two-step analysis. *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (citing *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988)). First, the court determines "whether the challenged actions involve an element of judgment or choice." *Terbush*, 516 F.3d at 1129 (citing *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). "This inquiry looks at the nature of the conduct, rather than the status of the actor." *Id.* (citing *Berkovitz*, 486 U.S. at 536). Where "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the conduct is not discretionary and the inquiry ends there. *Id.* (quoting *Berkovitz*, 486 U.S. at 536).

However, "[w]hen a specific course of action is not prescribed," it is likely that an element of choice or judgment is involved in the decision or action. *Id.* In that event, the next step is to consider "whether that judgment is of the kind that the discretionary function exception was designed to shield," that is, governmental actions and decisions based on considerations of public policy. *Id.* (quoting *Berkovitz*, 486 U.S. at 536-37). If the acts or decisions are rooted in public policy, the discretionary function exception applies even where there is an abuse of discretion. *Id.*

Courts have recognized the difficulty in determining whether or not the exception applies. *Id.* In *Gaubert*, the Supreme Court rejected a bright-line rule for applying the exception, and held that "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, there is a strong presumption that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.

////

8

Here, plaintiffs seek to ground their tort claims against the defendants in alleged "mandatory duties" owed by defendants under various regulations. Plaintiffs argue that defendants had no discretion in their duties to warn, protect and prevent harm, or to investigate their alleged injuries. However, none of the provisions plaintiffs cite specifically require defendants to act in the ways plaintiffs identify. Indeed, many of the cited laws have no applicability at all to defendants or to the present case. Even assuming defendants had some generalized or implied "duty to warn" plaintiffs of the telecommunications activities conducted by those leasing federal lands, such a broad duty necessarily involves the exercise of policy-based discretion. *See Blackburn v. United States*, 100 F.3d 1426, 1431 (9th Cir. 1996) (the "broad mandate to warn the public and protect it from special hazards involves the exercise of discretion in identifying such hazards, in determining which hazards require an explicit warning and in determining the precise manner in which to warn it of those hazards.").

First, the court addresses the duties that plaintiffs allege are "mandatory." Plaintiffs cite "15 U.S.C. § 1261(2)(g)," as creating a mandatory duty to "protect all minor children . . . from toxic airborne substances being emitted by EMF radiation devices." *See* Compl., ¶¶ 19, 30. The cited section does not exist. If plaintiffs mean to refer to 15 U.S.C. § 1261(g), that is a provision of the definitions section of the Federal Hazardous Substances Act which defines the term "toxic." It does not prescribe a specific course of conduct for the government agencies or its officers or employees. Indeed, the provision does not even lend itself to an analysis of whether there is implied or express agency discretion, as it contains no mandate whatsoever.

Next, plaintiffs cite FCC regulations governing construction permits and operational licenses for telecommunication facilities. *See* Compl., ¶¶ 9, 29, 31. In particular, they cite 47 C.F.R. §§ 1.1307(b), 1.1310, and 1.1305, as imposing a "mandatory duty" on defendants to warn of the dangers of radiation emitted from telecommunications facilities. These regulations impose no such duty on defendants. Rather, they merely implement Subchapter I of the National Environmental Policy Act of 1969, and "apply to all Commission actions that may or will have a

9

significant impact on the quality of the human environment." 47 C.F.R. § 1.1303.  In particular, section 1.1307(b), requires an entity seeking a license to construct and operate a telecommunications facility to prepare an environmental assessment for the FCC if the facility would cause human exposure to levels of radiofrequency radiation in excess of levels set forth in Section 1.1310.  As regulations implementing NEPA, they provide no private right of action, nor do they impose a mandatory duty on the named federal defendants.  Plaintiffs have not alleged that the United States has ever sought a license from the FCC, and fail to explain how it was otherwise obligated to comply with the cited regulations.

Finally, plaintiffs cite several regulations promulgated under the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. §§ 651, *et seq*., as imposing mandatory duties on defendants to warn and protect plaintiffs, and investigate their allegations of harm.  Compl., ¶¶ 19, 31.  They specifically cite 29 C.F.R. § 1910.268(a)(3), (c)(1), and (p)(2)-(3).

These regulations have no application to the government here.  They impose obligations on employers to train employees to avoid dangers and harmful substances, and to post warnings where microwave radiation from telecommunications equipment exceeds certain levels.  *See* 29 C.F.R. § 1910.268(c)(1), (p)(2).  Subsection (p)(3) requires an employer "to institute measures that insure that the employee's exposure is not greater than" permitted.  29 C.F.R. § 1910.268(p)(3).

These obligations – even assuming they are mandatory rather than discretionary – apply to employers.  *See* 29 C.F.R. § 1910.5(a) ("the standards contained in this part shall apply with respect to employments performed in a workplace in a State, the District of Columbia . . . .").  In the complaint, plaintiffs allege that they were employees (or family members of employees) of the CDF – not the federal government.  Compl., ¶¶ 12, 15.

Plaintiffs argue that these standards are applicable to the federal government under the "multi-employer" doctrine (Compl., ¶ 31), which some courts have applied in interpreting OSHA.  *See* Opp'n, pp. 9-10 (citing *Anthony Crane Rental, Inc. v. Reich*, 70 F.3d 1298, 1305

10

(D.C. Cir. 1995)).  This doctrine holds that on multi-employer worksites, an employer who creates a safety hazard can be liable under OSHA, regardless of whether the employees threatened are its own or those of another employer on the site.  *Reich*, 70 F.3d at 1305.

However, plaintiffs do not allege – nor can they show – that the federal government was an employer at LMT.  Indeed, the very definition of "employer" in the OSHA regulations specifically excludes the United States.  *See* 29 C.F.R. § 1910.2(c) ("Employer means a person engaged in a business affecting commerce who has employees, but *does not include the United States* or any State or political subdivision of a State.") (emphasis added); *see also Bruneau v. United States*, 150 F. Supp. 2d 303, 311 (D. Mass. 2001) (definition of employer does not include United States); *Hall v. United States,* No. 97-1344, 1998 U.S. App. LEXIS 10762, at *7 (6th Cir. May 27, 1998) (OSHA does not impose "specific requirements on the government because OSHA regulations expressly exclude the United States from the definition of an employer obligated to comply with OSHA.").

Thus, these regulations, like the others cited, have no application to the United States and do not impose "mandatory duties" barring application of the discretionary function exception.  Similarly, the criminal statutes cited by plaintiffs do not prescribe a specific course of conduct for a federal employee.  *See, e.g.,* 18 U.S.C. § 241 (crime of conspiring to violate civil rights).[7]  Plaintiffs point to no other statute or regulation requiring the defendants to warn plaintiffs, prevent their exposure to the alleged radiation at LMT, or otherwise remedy their injuries.  Moreover, to the extent plaintiffs mean to cite a general duty to warn and investigate not otherwise dictated by statute, the court finds the discretionary function exception bars any tort claims premised on that theory.  First, plaintiffs have failed to identify such a duty.  Second,

---

[7] Likewise, to the extent plaintiffs attempt to state a claim against defendants under 47 U.S.C. § 206, or to invoke it as a statute imposing a "mandatory duty," they cannot do so.  That section of the FCA provides a private right of action against a common carrier engaged in interstate or intrastate communication by wire or radio.  Plaintiffs do not and cannot allege that any of the named defendants are common carriers, or that the statute otherwise imposes a mandatory duty on the United States or its officers named in this complaint.

11

even assuming they could identify such a duty of care, nearly all decisions addressing failure to warn claims against the federal government have been dismissed pursuant to the discretionary function exception. *See Terbush*, 516 F.3d at 1135-36 (discussing dismissals of failure to warn cases against the National Park Service); *Blackburn*, 100 F.3d at 1431 (9th Cir. 1996) (broad mandate to warn and protect the public from special hazards involves the exercise of discretion).

Here, plaintiffs fail to demonstrate the "threshold requirement" of a mandatory duty. *See Terbush*, 516 F.3d at 1135. They also fail to rebut the presumption that the absence of such a duty concerning the telecommunications facilities indicates that decisions regarding the public's safety with respect thereto have been left squarely within the discretion of the Forest Service. *See Terbush*, 516 F.3d at 1129; *see Gaubert*, 499 U.S. at 324.

Plaintiffs' argument that their allegations of constitutional and criminal violations should defeat the discretionary function exception is not-well taken. While "the Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply," plaintiffs fail to explain how the Constitution so limits the discretion in this case. *See Nurse*, 226 F.3d at 1002, n.2. Plaintiffs only generally claim that defendants deprived them of "freedom, First Amendment rights, rights to due process, and [equal protection of the laws]." Opp'n, at p. 12; Compl., ¶ 57. These vague assertions do nothing to show how the discretion of government officials to manage forest resources has been circumscribed here. Plaintiffs allege no nexus between the alleged constitutional violations and any specific management duties imposed on defendants. Neither do plaintiffs cite any fact or authority supporting their claim that they have a constitutional right to have the named defendants protect them from radiation at LMT. Based on the foregoing, the court finds that the discretionary function exception applies to plaintiffs' federal tort claims, and that they should be dismissed on that basis.

3. <u>Constitutional Claims</u>

Interwoven among plaintiff's tort claim allegations are assorted references to 42 U.S.C. § 1983. It is apparent that the gravamen of this complaint is an attempt to assert common law

tort claims for alleged personal injuries premised on negligence. However, to the extent plaintiffs seek to bring separate claims under 42 U.S.C. § 1983 for alleged violations of their constitutional rights, those claims must also be dismissed.[8]

To prevail on a § 1983 claim as to the individually named defendants, plaintiffs would have to show that they deprived plaintiffs of a federally protected right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Here, the claims involve federal officials or employees who were acting in their official capacities, and in the scope of their federal employment. As such, it is not at all clear how plaintiffs believe that they were acting under "color of state law." *See Kali v. Bowen*, 854 F.2d 329, 331 (9th Cir. 1988) ("federal officials who violate federal rights protected by § 1983 generally do not act under "color of state law.'"). More importantly, plaintiffs' complaint does not explain how the alleged conduct deprived them of a federally protected right. They vaguely assert that they were denied some constitutional rights by virtue of the alleged torts. Indeed, the factual allegations regarding defendants' failures to warn, protect and investigate appear in sections of the complaint purportedly alleging § 1983 violations. *See, e.g.*, Compl., p. 11. In fact, plaintiffs' claims for alleged constitutional violations are little more than the previously discussed tort claims with a tacked-on "constitutional" label. As such, plaintiffs' allegations regarding violations of federally protected rights suffer the same infirmities as discussed above and must be dismissed for the same reasons. Plaintiffs have simply not identified a statute creating the federally protected rights that they assert here. Likewise, the various regulations and statutes they cite do not create constitutionally cognizable causes of action.

Assuming that plaintiffs mean to allege separate claims against the United States and its Agency, the USFS, for violations of their constitutional rights, such claims are barred under the

---

[8] Plaintiffs have cited a plethora of federal statutes, including § 1983, as a basis for recovering damages from the named defendants. *See* Compl., p. 21. Indeed, each plaintiff seeks a separate award of damages in the amount of $12,500,000, or a total in excess of $ 87 million. *Id.*

13

doctrine of sovereign immunity.[9]  The United States, as a sovereign, is absolutely immune from suit unless it has expressly waived its immunity and consented to suit.  *United States v. Shaw*, 309 U.S. 495, 500-01 (1940); *Daly-Murphy v. Winston*, 837 F.2d 348, 356 (9th Cir. 1987) (absent a waiver of sovereign immunity, an individual may not maintain a constitutional claim against the United States or its agencies).  Such consent is a prerequisite for jurisdiction.  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  Moreover, plaintiffs confirmed that they are suing the named individuals in their official capacities and, as such, this immunity extends to federal officials and bars claims against them in their official capacities absent an express waiver. *Mitchell*, 445 U.S. 535, 538 (1980).  Plaintiffs have not pointed to any authority demonstrating consent or waiver.

If plaintiffs intended to bring a *Bivens* action, the claim fails for similar reasons.  The statutes relied on by plaintiffs do not establish constitutionally cognizable claims.  Moreover, the United States has not waived sovereign immunity for purposes of a *Bivens* claim.  *See FDIC v. Meyer*, 510 U.S. 471, 484-85 (1994) (sovereign immunity bars *Bivens* actions against a federal agency); *Balser v. DOJ*, 327 F.3d 903, 909 (9th Cir. 2003); *see Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971).  Finally, to the extent plaintiffs meant to assert *Bivens* claims against the named individuals, those claims are barred as well.  A *Bivens* suit is "against a federal employee 'in his individual rather than official capacity.'" *Balser*, 327 F.3d at 909 (quoting *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983)).  Again, plaintiffs' claims are

////

////

---

[9] Apart from the interplay between the tort claims and the alleged constitutional claims, plaintiffs seem to allege that their dissatisfaction with the way in which their administrative claims were handled amounts to a constitutional violation.  *See* Compl., pp. 16-20.  The implication appears to be that the denial of their administrative claims deprived them of due process.  However, they cite no authority establishing a due process right to have their tort claims processed in a particular manner.  Indeed, the statute contemplates the filing of a federal action where a claim is not acted upon within six months.  *See* 28 U.S.C. § 2401(b). That is precisely what plaintiffs did here.

against the defendants in their official capacities.[10]  Compl., ¶ 7; *see also* f.n. 5.  For these reasons, any separate constitutional claims should also be dismissed.

### III. CONCLUSION

In accordance with the foregoing, IT IS RECOMMENDED that:

1. Defendants' Rule 12(b)(1) motion to dismiss be granted; and,

2. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten (10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten (10) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED:  August 15, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[10] Even if plaintiffs could name a proper defendant in connection with their constitutional claims, such claims would be barred by the applicable two-year statute of limitations, based on the allegations in the complaint.  *See Western Center for Journalism v. Cederquist*, 235 F.3d 1153, 1156 (9th Cir. 2000) (statute of limitations for a *Bivens* action is the same as the state's personal injury statute of limitations).  In California, the applicable statute of limitations is two years.  Cal. Civ. Proc. Code § 335.1.  A *Bivens* claims accrues when the plaintiff knows, or has reason to know, of the injury.  *Cederquist,* 235 F.3d. at 1156.  Here, plaintiffs allege that they had reason to believe they had sustained injuries caused by radiation exposure at LMT by at least January of 2004.  *See* Compl., ¶¶ 20-25.  They did not file this action until December 2007.